UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

LARRY DARNELL JONES,

    Plaintiff,

v.                                                                                           Hon. Paul L. Maloney

ZACHARY JENKINS, et al.,                         Case No. 1:21-cv-00506

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff Larry Darnell Jones has filed a pro se complaint against numerous Defendants based on an incident that occurred at a Menards store in Norton Shores, Michigan, on December 9, 2020. Defendants include Zachary Jenkins, an employee of O'Brien and Associates Security and Investigations, who worked at Menards; Menards employees Robert Saena, Daniel Herrera, James Smith, Jennifer Unknown, and Hunter Czinder; and City of Norton Shores employees Officer Peyton Haney, Sergeant Todd Baker, Lieutenant Mark Vanderstelt, and City Administrator Mark Meyers. Jones alleges federal claims pursuant to 42 U.S.C. § 1983. He also invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367 over his state-law claims. (ECF No. 1 at PageID.3.) Jones seeks $500,000.00 in compensatory and punitive damages for alleged violations.

Having granted Jones's motion to proceed as a pauper, I have conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it is frivolous, malicious, or fails to state a claim upon which relief can be granted. Based on this review, I conclude that Jones fails to state a claim under Section 1983 and that several of his federal claims fail to state a claim. I therefore recommend that the Court dismiss the federal claims with prejudice. In addition,

I recommend that the Court decline to exercise supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

## I.    Background

During the summer and fall of 2020, Jones was rehabbing a house in Muskegon Heights, Michigan, and had made several purchases from the Menards store at 5487 Harvey Street. (*Id.* at PageID.30–44.) On December 9, 2020, Jones went to the Harvey Street Menards store with Frederick Lee Banks. After Jones and Banks entered the store, they separated to obtain the items they needed. (*Id.* at PageID.5.) Shortly thereafter, Banks rejoined Jones in an aisle. Video surveillance showed Banks pushing the cart. Banks then took an item out of the cart, and Banks and Jones switched places, with Jones pushing the cart. Banks then concealed an item in his jacket. (*Id.* at PageID.16.) Jones left Banks again and went to pay for his items. After completing his purchase, Jones exited the store and met up with Banks. At that point, Defendants Jenkins, Saena, Herrera, and Smith approached Jones and Banks and confronted them about the concealed item. Defendants then escorted Jones and Banks back into the store and took them to the security room. When Jones asked Jenkins whether he was under arrest, Jenkins told him yes. Jenkins also told Jones that he was not free to leave. Once Defendant Jenkins and the others placed Jones and Banks in the room, Jones alleges they falsely accused him of retail fraud in violation of Mich. Comp. Laws § 750.356c(1). (*Id.* at PageID.6.)

The Menards Defendants called the Norton Shores Police Department, and Defendant Officer Haney arrived on the scene. After Officer Haney arrived, Jenkins issued Banks a civil restitution demand notice on behalf of Menards and allowed Banks to leave. (*Id.* at PageID.6–7, 12.) Although Defendants did not connect Jones to Banks's attempted retail fraud, Jenkins requested Officer Haney to "trespass" Jones from Menards stores due to previous sexual harassment incidents by Jones during his previous visits to the store. Pursuant to Jenkins' request,

Officer Haney "trespassed" Jones, thereby banning him from Menards stores.[1] (*Id.* at PageID.8, 12.)

Later that day, Officer Haney spoke to Jones by phone. Jones was upset and insisted that he did not steal anything. Jones also said that he did not make any sexual comment toward any Menards employee. Jones asked Officer Haney to make sure that she wrote a factual report and reviewed the video footage. (*Id.* at PageID.12.) In preparing to file the instant lawsuit, Jones obtained a copy of the police report. On December 19, 2020, Officer Haney attached surveillance video to the police report, along with a written statement by a Menards employee regarding an alleged previous sexual harassment complaint about Jones. (*Id.* at PageID.20.) Upon examining the report, Jones noticed that Defendant Officer Haney had conducted an improper investigation by not including in the report all of the names of the individuals involved in the illegal arrest on December 9, 2020. Jones also noted information regarding an "alleged sexual harassment" issue that he had never heard about and that had nothing to do with the December 9, 2020 incident. The information regarding the alleged sexual harassment was set forth in statements from Menards employees Jen (Unknown) and Hunter Czinder about two incidents that had occurred in October 2020.[2] (*Id.* at PageID.21, 26–29.)

On December 24, 2020, Jones emailed Defendant Meyers, requesting that he have Defendant Vanderstelt direct Officer Haney to conduct a proper investigation to include the names of all those involved in the December 9, 2020 incident and to investigate the previous incidents of

---

[1] Pursuant to Mich. Com. Laws § 552(1), a person shall not "[e]nter the lands or premises of another without lawful authority after having been forbidden to do so by the owner or occupant or the agent of the owner or occupant."

[2] In his complaint, Jones refers to "Jen" "employee of Menards Jennifer (a.k.a. Jen) last name unknown," (*Id.* at PageID.2), while in his email to Defendant Meyers, Jones referred to the employee as Jen Copeland. (*Id.* at PageID.22.)

sexual harassment that employee Jen alleged, including the dates on which the incidents occurred. (*Id.* at PageID.21–22.) On December 30, 2020, Defendant Meyers emailed Jones stating that he had spoken with Police Chief Gale and that Chief Gale would direct Lieutenant Vanderstelt to review the situation and Jones's concerns. (*Id.* at PageID.23.) On January 2, 2021, Officer Haney updated her report to add Defendants Smith and Herrera, as Jones had requested. On January 4, 2021, Lieutenant Vanderstelt contacted Jones and advised him of the additional names that had been added to the report. Although Jones indicated that he felt Menards was making up the sexual harassment claim to "trespass" him, Defendant Vanderstelt explained to Jones that he would need to contact Menards if he believed that Menards had improperly "trespassed" him from its store. At Jones's request, Lieutenant Vanderstelt contacted Jenkins to obtain copies of reports of the sexual harassment incidents. Defendant Jenkins told Lieutenant Vanderstelt that the first incident occurred on October 2, 2020. After obtaining the statements from Defendant Jenkins, Lieutenant Vanderstelt attached them to the report. (*Id.* at PageID.18.)

## II.     Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a

4

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

When evaluating a complaint under Rule 12(b)(6), a court may consider the complaint and any exhibits attached thereto, public records, and items appearing in the record of the case. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Cont'l Identification Prods., Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich. Jan. 2, 2008) (stating that "an exhibit to a pleading is considered a part of the pleading" and "the Court may properly consider the exhibits…in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 F. App'x. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

While it is well established that a court must construe a pro se plaintiff's pleadings liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), courts may not "construct the plaintiff's legal arguments for him" or create a claim for him. *Thompson v. Mich. Dep't of Corrs.*, No. 05-40293, 2009 WL 3872148, at *3 (E.D. Mich. Nov. 18, 2009) (citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), and *Clark v. National Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

### III.    Discussion

The federal claims Jones asserts are not entirely clear from his complaint, as his legal assertions are somewhat scattered throughout the complaint. In any event, it is clear that Jones alleges that he was illegally seized in violation of the Fourth Amendment when he was detained at Menards on December 9, 2020. Jones also appears to allege that Officer Haney, and perhaps Lieutenant Vanderstelt, failed to conduct a proper investigation. (*Id.* at PageID.21.) Jones also alleges that Officer Haney's failure to initially include certain names in her report violated his First Amendment right to petition the government for redress of grievances. (*Id.* at PageID.22, 46.) Finally, Jones alleges that Defendants violated his First Amendment rights to peacefully assemble, to "practice his son of man secular religious beliefs," and to be free from retaliation. (*Id.* at PgeID.46.)

### A.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

#### 1.    State Actor

As an initial matter, only some Defendants can be held liable under Section 1983. Defendants Officer Payton, Lieutenant Vanderstelt, Sergeant Baker, and City Administrator Meyers are all employed by the City of Norton Shores and, thus, are state actors. *See Savage v. City of Pontiac*, 743 F. Supp. 2d 678, 683 (E.D. Mich. 2010) ("Municipal employees qualify as

state actors because they exercise the power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed by the authority of state law.'" (quoting *West*, 487 U.S. at 48)).

On the other hand, Jones alleges no fact in his complaint indicating that Defendants Jenkins, Saena, Herrera, Smith, Jen (unknown), and Czinder were state actors. Those Defendants were employed by, and acting within the scope of their employment with, Menards (or in the case of Defendant Jenkins, O'Brien and Associates Security and Investigations) a private company. *See Sheppard v. CVS Pharm.*, No. 07-13099, 2008 WL 5447865, at *1 (E.D. Mich. Dec. 31, 2008) (dismissing claim against pharmacy, its store manager, and a stock person because they were not state actors and "no amount of discovery could establish that CVS and its two store employees were state actors performing a governmental function"). "A private party's actions constitute state action under section 1983 where those actions may be 'fairly attributable to the state.'" *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (en banc) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982)). "The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Id.* (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). In addition, if "a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983." *Cooper v. Parrish*, 203 F.3d 937, 952 n. 2 (6th Cir. 2000). Jones does not allege that Menards or Defendants Jenkins, Saena, Herrera, Smith, Jen (unknown), and Czinder were state actors under any of the Supreme Court's tests or conspired with Defendant Officer Haney or any

of the other Norton Shores Defendants to deprive Jones of his constitutional rights.[3] *See Tillman v. Meijer Store*, No. 1:15-cv-459, 2015 WL 4247786, at *1 (W.D. Mich. July 13, 2015) (holding that the plaintiff failed to state a claim against a store and its loss prevention officer because he failed to allege any conduct by those private parties that could be fairly attributable to the State). Moreover, the facts he alleges do not show a conspiracy or state action by Defendants Jenkins, Saena, Herrera, Smith, Jen (unknown), and Czinder.

## 2.   Fourth Amendment

Jones alleges that his rights under the Fourth Amendment were violated when he was escorted and detained in the store security room after Jenkins or other security personnel observed Banks on the security camera conceal something in his jacket. Jones brings this claim against Defendant Officer Haney.[4] The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. Am. IV. "An individual is seized when an officer 'by means of physical force or show of authority, has in some way restrained [his] liberty.'" *United States v. Beauchamp*, 659 F.3d 560, 566 (6th Cir. 2011) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)) (alteration in original). A seizure occurs where, considering all of the circumstances, "a reasonable person

---

[3] I note that the Sixth Circuit has held that private security police officers licensed under Mich. Comp. Laws § 338.1079 qualify as state actors under the public function test. *See Romanski v. Detroit Entm't, LLC*, 428 F.3d 629, 636–38 (6th Cir. 2005). Thus, it is possible that Defendant Jenkins could, under appropriate circumstances, qualify as a state actor. Jones has not alleged that Jenkins was so licensed, and the Sixth Circuit has squarely held that, where a private security guard does not exercise "any powers above and beyond those possessed by ordinary citizens," including the common-law "shopkeeper's privilege," the security guard cannot be considered a state actor under the public function test. *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 831 (6th Cir. 2007). In any event, even if Defendant Jenkins could be considered a state actor, for the reasons set forth regarding the Fourth Amendment claim, Jones cannot demonstrate a Fourth Amendment violation.

[4] Jones also alleges that Defendant Sergeant Baker seized him in violation of his Fourth Amendment rights. (*Id.* at PageID.62–63.) However, Jones's own factual allegations suggest that Sergeant Baker was not present at the Menards during the incident on December 9, 2020. (*Id.* at PageID.6.) Rather, Jones indicates only that Officer Payton arrived at the scene. In addition, Officer Payton does not mention Sergeant Baker's presence at the scene in her report. (PageID.12.)

would have believed that he was not free to leave." *Id.* (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

Jones has sufficiently alleged that he was seized when he was escorted back into the store and detained in the security office for questioning. However, his allegations show that Officer Haney was not involved in the seizure. According to Jones, Defendants Jenkins, Saena, Herrera, and Smith—who were not state actors—had already seized Jones at the time Officer Haney arrived at the store. Thus, Officer Haney was not personally involved in the initial seizure. *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (noting that personal involvement in the alleged constitutional deprivation is required for Section 1983 liability). Moreover, as Jones alleges, Defendants Jenkins, Saena, Herrera, and Smith seized Jones pursuant to Mich. Comp. Laws § 764.16(d), which codifies, among other things, the shopkeeper's privilege. The statute provides, in relevant part, that a private person may make an arrest:

> If the private person is a merchant, an agent of a merchant, an employee of a merchant, or an independent contractor providing security for a merchant of a store and has reasonable cause to believe that the person to be arrested has violated section 356c or 356d of the Michigan penal code, Act No. 328 of the Public Acts of 1931, being sections 750.356c and 750.356d of the Michigan Compiled Laws, in that store, regardless of whether the violation was committed in the presence of the private person.

Mich. Comp. Laws § 764.16(d). Sections 356c and 356d, Mich. Comp. Laws. §§ 750.356c and 356d, pertain to retail fraud. As set forth in the police report, which Jones has made an integral part of his complaint, the surveillance video showed Jones and Banks together, when the two men switched places, and Banks concealed an item in his jacket.[5] (*Id.* at PageID.16.) Although Jones

---

[5] A police report is admissible pursuant to Federal Rule of Evidence 803(8) "to the extent that it is based on the officer's own observations or actions." *Palmer v. Town of Jonesborough*, No. 2:08-

9

complains that he was falsely accused of retail fraud, the surveillance video provided ample basis for "reasonable cause" to believe that Jones may have been connected to the attempted retail fraud, given that Jones and Banks were together when Banks concealed the item in his jacket. Certainly, it provided reasonable cause (or for the Officer Haney called to the scene to investigate, reasonable suspicion) to detain both men to ascertain whether they were both complicit in the retail fraud.

Accordingly, I recommend that Jones's Fourth Amendment claim be dismissed.

### 3.  Inadequate Police Investigation

Jones alleges that Officer Haney "conducted an improper investigation by not including all of the names of the people that took part in the illegal arrest situation that occurred on December 9th, 2020." (*Id.* at PageID.23.) This claim lacks merit, as "there is no right to an adequate police investigation." *Khaled v. Dearborn Heights Police Dep't*, 711 F. App'x 766, 771 (6th Cir. 2017) (citing *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007)). Moreover, Jones concedes that after he brought the issue to Defendant Meyers's attention, Officer Haney obtained the additional names and made them part of the report. Thus, I recommend that this claim be dismissed as frivolous.

### 4.  Right to Petition

In the heading of his first and second causes of action, Jones states that Defendants violated his First Amendment right to petition the government for the redress of grievances. (*Id.* at PageID.46, 74.) Jones provides few details explaining how this right was violated, although in his email to Defendant Meyers, he claimed that Officer Haney's failure to include all of the names of

---

CV-345, 2009 WL 1255780, at *2 (E.D. Tenn. May 1, 2009) (citing *Miller v. Field*, 35 F.3d 1088, 1092 (6th Cir. 1994)); *see also Bodman v. Dennis*, No. 1:11-CV-600, 2013 WL 2458383, at *3 (W.D. Mich. June 6, 2013) (matters reported in a police report based on an officer's first-hand observations may be admitted pursuant to Federal Rule of Evidence 803(8)). Here, Officer Haney described in her report what the surveillance video shows.

those involved in the December 9, 2020 incident violated his First Amendment right to petition the government. (*Id.* at PageID.22.)

The Petition Clause of the First Amendment guarantees the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. The right to petition under the First Amendment, however, is limited to matters of public concern. *Martin v. O'Brien*, 207 F. App'x. 587, 590 (6th Cir. 2006) (citing *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1226 (6th Cir. 1997)). In *Connick v. Myers*, 461 U.S. 138, 146 (1983), the Supreme Court explained that speech addresses a matter of public concern where it can "be fairly considered as relating to any matter of political, social, or other concern to the community. . . ." In *Valot*, the Sixth Circuit stated that the inquiry as to whether speech addresses a matter of public concern is guided by "'the content, form, and context of a given statement, as revealed by the whole record.'" 107 F.3d at 1226 (quoting *Connick*, 461 U.S. at 147–48). "Speech does not generally touch on a matter of public concern, as that requirement has been interpreted, where its aim is to air or remedy grievances of a purely personal nature." *Id.* Jones has wholly failed to allege any facts demonstrating that his petition involved a matter of public concern.

Moreover, by its terms, the Petition Clause guarantees the right to petition the government and prevents the government from taking action against a citizen for exercising that right. The Clause contains no requirement that the government act on such petitions or resolve any petition in favor of the petitioner. And, in any event, as set forth above, Officer Haney obtained the additional names and included them in the report as Jones had requested.

Accordingly, I recommend that this claim be dismissed, as it is frivolous and lacks merit.

### 5. Rights to Peacefully Assemble, Practice Religious Secular Beliefs, and Be Free from Retaliation

Jones alleges in conclusory fashion that Defendants violated his First Amendment rights to peacefully assemble, practice his "son of man" religious beliefs, and be free from retaliation. All of these claims are stated as legal conclusions as Jones fails to articulate how any Defendant violated such rights. Jones has no constitutional right to assemble or practice his religion in a private store. Moreover, he does not allege that he engaged in protected conduct or that any state actor took a retaliatory action against him. Jones's legal conclusions do not "give the defendant[s] 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). Accordingly, these claims should be dismissed.

### B. State-Law Claims

If the Court adopts the recommendation to dismiss Jones's federal claims, I recommend that it dismiss his state-law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).[6] "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). In deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Applying these considerations, it is especially appropriate here to dismiss the state-law claims as the complaint has yet to be served.

---

[6] Although Jones cites 28 U.S.C. § 1332, he does not purport to invoke diversity jurisdiction, nor does he properly allege that the parties are diverse. (ECF No. 1 at PageID.3.)

## IV. Conclusion

For the forgoing reasons, I recommend that the Court dismiss Jones's federal claims and decline to exercise supplemental jurisdiction over his state-law claims. The Court must also decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). See *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Good faith is judged objectively, *Coppedge v. United States*, 369 U.S. 438, 445 (1962), and an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis either in fact or law. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). For the same reasons that I recommend dismissal of the action, I discern no good faith basis for an appeal and recommend that, should Jones appeal this decision, the Court assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

Date:  July 16, 2021                                             /s/ Sally J. Berens
                                                          SALLY J. BERENS
                                                          U.S. Magistrate Judge

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).